1
2
3
4
5
6

7                    **UNITED STATES DISTRICT COURT**

8                   **SOUTHERN DISTRICT OF CALIFORNIA**

9

10   JAIME HOYOS,                              CASE NO. 09cv0388 L (NLS)

11                          Petitioner,        *DEATH PENALTY CASE*

12                                             **ORDER:**

13                                             **(1) DENYING RESPONDENT'S**
                                               **MOTION TO DISMISS FOR**
14        vs.                                  **FAILURE TO EXHAUST;**

15                                             **(2) GRANTING PETITIONER'S**
                                               **MOTION TO STAY FEDERAL**
16                                             **PETITION UNDER KELLY V.**
                                               **SMALL; AND,**
17   VINCENT CULLEN, Acting Warden of San
18   Quentin State Prison,                     **(3) SETTING DEADLINES FOR**
                                               **WITHDRAWAL OF UNEXHAUSTED**
19                          Respondent.        **CLAIM UNDER KELLY AND FOR**
                                               **COMMENCEMENT OF STATE**
20                                             **EXHAUSTION PROCEEDINGS**

21

22        On October 7, 2010, Respondent filed a Motion to Dismiss the First Amended Petition for

23   Failure to Exhaust State Remedies with respect to Claims 14 and 22.  On October 29, 2010, Petitioner

24   filed an Opposition to the Motion to Dismiss, and alternatively, a Motion for Stay and Abeyance in

25   the event that the Court found the contested claims unexhausted.  Respondent has also filed a Reply,

26   and Petitioner has filed a Sur-Reply.  The Court finds the issues presented suitable for decision

27   without oral argument.  For the following reasons, the Court **DENIES** Respondent's Motion to

28

1    Dismiss, **GRANTS** Petitioner's Motion for Stay and Abeyance, and **SETS** deadlines as outlined

2    below.

3

4                                    **I. PROCEDURAL HISTORY**

5        Petitioner Jaime Hoyos and co-defendant Emilio Alvarado were charged with two counts of

6    first-degree murder and one count of attempted murder in the deaths of Daniel and Mary Magoon and

7    the wounding of their 3 year old son J.  Both defendants were also charged with conspiracy to commit

8    robbery, first degree robbery, burglary, grand theft of a firearm, and transporting more than 28.5 grams

9    of marijuana.  Petitioner and Alvarado were tried together.

10       After a guilt phase trial, Petitioner and Alvarado were convicted on two counts of first-degree

11   murder (Cal. Penal Code § 187) and acquitted of attempted murder but convicted of the lesser

12   included offense of assault with a firearm (Cal. Penal Code §§ 664, 187, 245 (a)(2)).  Petitioner and

13   Alvarado were also convicted of conspiracy to commit robbery (Cal. Penal Code §§ 211, 182.1), first

14   degree robbery (Cal. Penal Code § 211), burglary (Cal. Penal Code § 459), grand theft of a firearm

15   (Cal. Penal Code § 487.3), and transporting more than 28.5 grams of marijuana (California Health and

16   Safety Code § 11360(a)).

17       The jury further found that Petitioner and Alvarado used a firearm in the commission of the

18   murder (Cal. Penal Code § 12022.5).  The jury also found true the special circumstance allegations

19   that the murder was committed during the course of a robbery and burglary (Cal. Penal Code §

20   190.2(a)(17), and multiple murder (Cal. Penal Code § 190.2(a)(3)).  Before the penalty phase, the trial

21   court denied Petitioner's motion for a new trial, but granted Alvarado's.  Alvarado later pled guilty

22   and was sentenced to life without the possibility of parole.

23       After the penalty phase, the jury returned a sentence of life without the possibility of parole

24   in the murder of Daniel Magoon, and a verdict of death in the murder of Mary Magoon.  On July 11,

25   1994, the trial court denied Petitioner's motions for a new trial and for modification of the verdict, and

26   sentenced him to death.

27       On automatic appeal of this conviction and judgment to the California Supreme Court,

28   Petitioner filed an opening brief on October 17, 2003, raising sixteen (16) claims for relief.  Petitioner

1  filed a reply brief on March 16, 2006.  The California Supreme Court affirmed Petitioner's conviction

2  and sentence in a decision issued on July 23, 2007.  People v. Hoyos, 41 Cal. 4th 872 (2007).  On

3  February 19, 2008, the Supreme Court of the United States denied his petition for a writ of certiorari.

4       On September 11, 2006, while his direct appeal was pending, Petitioner filed a habeas petition

5  with the California Supreme Court, raising eighteen (18) claims for relief.  (Lodgment No. 106.)

6  Petitioner also filed a reply brief on July 11, 2008.  (Lodgment No. 117.)  The petition was denied on

7  February 18, 2009, without an evidentiary hearing.

8       On February 26, 2009, Petitioner filed motions for the appointment of counsel and for a stay

9  of execution with this Court.  On October 2, 2009, the Court appointed Mr. Multhaup and Mr. Adams

10  as counsel.  On February 16, 2010, the Court granted Petitioner's Motion for Equitable Tolling and

11  Tolling the Deadline for Filing the First Amended Petition to September 1, 2010.  On February 18,

12  2010, Petitioner filed a protective Petition for a Writ of Habeas Corpus.  On September 1, 2010,

13  Petitioner filed a First Amended Petition ["FAP"], the operative pleading in this action.

14       On October 7, 2010, Respondent filed the instant Motion to Dismiss ["Resp. MTD"] and

15  attached memorandum in support of the motion ["Resp. Mem."].  Petitioner filed an Opposition to the

16  Motion to Dismiss together with a Motion for Stay and Abeyance  ["Pet. Opp. and Mot."] on October

17  29, 2010.  Respondent filed a Reply to the Motion to Dismiss ["Resp. Reply"] and Opposition to the

18  Motion for Stay and Abeyance ["Resp. Opp."] on November 10, 2010, and on November 19, 2010,

19  Petitioner filed a Reply to Respondent's Opposition ["Pet. Reply"].

20  ## II.  STATUTORY EXHAUSTION REQUIREMENTS

21       Title 28, United States Code, § 2254(b)-(c), sets forth the following rule regarding exhaustion

22  requirements for federal habeas corpus claims:

23
24      (b) (1) An application for a writ of habeas corpus on behalf of a person in custody
       pursuant to the judgment of a State court shall not be granted unless it appears that–

25         (A) the applicant has exhausted the remedies available in the courts of the
       State; or

26         (B)(i) there is an absence of available State corrective process; or
27          (ii) circumstances exist that render such process ineffective to
       protect the rights of the applicant.

28

1

2

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

3

4

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

5

6

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

7

### III. EXHAUSTION-GENERALLY

8

9

10

11

12

13

14

15

16

The exhaustion of available state judicial remedies is generally a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings.  28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 522 (1982).  As a matter of federal-state comity, federal courts generally do not consider a claim in a habeas corpus proceeding until the state courts have had an opportunity to act upon the claim.  Rose, 455 U.S. at 515.  To satisfy the exhaustion requirement a petitioner must first provide the state courts with a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim."  Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971)).  The petitioner carries the burden of showing that a claim has been exhausted.  Williams v. Craven, 460 F.2d 1253, 1254 (9th Cir. 1972).

17

18

19

20

21

22

To exhaust state judicial remedies, a state prisoner must present the California Supreme Court (or the highest state court with jurisdiction over the claims) a chance to rule on the merits of every issue raised in his or her federal habeas petition.  28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  In most instances, a claim is exhausted once it is presented to a state's highest court, either on direct appeal or through state collateral proceedings.  Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002).

23

24

25

26

27

28

The petitioner must have raised the very same federal claims brought in the federal petition before the state supreme court.  Duncan v. Henry, 513 U.S. 364, 365-66 (1995).  For example, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  Id. at 366.  In addition, the petitioner must also specifically indicate to the state court how and why his claims are based on federal law.  Shumway v. Payne, 223 F.3d 982, 987-88

1   (9th Cir. 2000).  The petitioner must have presented the same factual basis and legal theory in state

2   court for the claim that he presents in federal court.  Gray v. Netherland, 518 U.S. 152, 163 (1996).

3   The exhaustion requirement is satisfied once the "substance of the claim has been fairly presented"

4   to the state's highest court.  Duncan, 513 U.S. at 367; Vasquez v. Hillary, 474 U.S. 254, 257 (1986).

5                                **IV. DISPUTED CLAIMS**

6          **1.      Claim 14**

7          In Claim 14, Petitioner asserts that he was "deprived of due process, effective assistance of

8   counsel, and his right to testify with respect to the third party culpability defense."  (FAP at 30.)

9   Specifically, Petitioner contends that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963),

10  in failing to turn over evidence regarding David Luna, who Petitioner alleges to be involved in the

11  murders.  (FAP at 71.)   Petitioner also asserts that shortly after the murder of the victims, a

12  confidential informant told the police that the victims had been killed at the direction of David Luna,

13  that the "report was turned over to defense counsel, obviously an investigative lead as to a third party

14  defense," and contends that trial counsel was prejudicially ineffective in failing to investigate and

15  develop this defense.  (Id.)

16         Respondent acknowledges that Petitioner presented a Brady claim to the California Supreme

17  Court asserting prosecutorial misconduct in the suppression of information regarding David Luna, but

18  maintains that "he [Petitioner] failed to set forth to the California Supreme Court the operative facts

19  and federal legal theory for his claim that his trial counsel failed to investigate a third party culpability

20  defense."  (Resp. Mem. at 8.)   Respondent additionally contends that the new factual allegations

21  "fundamentally alter" the claim previously presented to the state court, citing the addition of the

22  Echeverria declaration, and notes that the First Amended Petition "also contains multiple references

23  to pages of discovery from the San Diego District Attorney's Office that were not presented to the

24  California Supreme Court either on direct appeal or on habeas corpus."  (Id. at 9.)

25         Petitioner maintains that "the facts constituting the ineffective assistance were set forth in

26  Claim IV of the state habeas corpus petition."  (Pet. Opp. and Mot. at 2.)  Petitioner concedes that

27  although "state habeas counsel did not expressly plead ineffective assistance of counsel with respect

28

1    to the third party culpability defense, counsel pled alleged facts regarding trial counsel's failure to

2    pursue that defense that provided a substantial factual basis for that claim."  (Id. at 8.)

3         Petitioner cites the Ninth Circuit's decision in Valdovinos v. McGrath, 598 F.3d 568, 575 (9th

4    Cir. 2010), in support of his contention that Brady and ineffective assistance claims "may well be two

5    overlapping legal claims applicable to the same set of operative facts."  (Pet. Opp. and Mot. at 4.)

6    However, Valdovinos does little to inform the Court's decision in this case.  Valdovinos concerned

7    the amendment of federal pleadings to add newly discovered facts after the completion of exhaustion

8    proceedings, and in that case, the petitioner had previously alleged both a Brady claim and a claim of

9    ineffective assistance of counsel, and sought only to add newly discovered facts to the claim of

10   ineffective assistance of counsel.  See Valdovinos, 598 F.3d at 575-76.  Here, the Court's inquiry turns

11   on whether Petitioner fairly presented the state supreme court with the legal theory of ineffective

12   assistance of counsel claim based on trial counsel's alleged failure to investigate and present a third-

13   party culpability defense.  See Gray, 518 U.S. at 163 (requiring same facutal basus and legal theory

14   raised in federal court to be presented to the state court.)  Despite Petitioner's assertion that Brady and

15   ineffective assistance of counsel claims may involve some overlap, especially if they apply to the same

16   set of operative facts, the fact remains that Petitioner must raise both legal theories before the

17   California Supreme Court if he intends the federal court to consider both claims.  See Rose, 455 U.S.

18   at 515; Duncan, 513 U.S. at 366 (reasserting that a federal claim must be fairly presented to a state

19   court in order to exhaust it, and repeating that "mere similarity of claims is insufficient to exhaust.")

20        In Claim IV of the state habeas petition, Petitioner raised a Brady claim, contending that the

21   prosecution failed to turn over evidence regarding David Luna to the defense.  In that claim, Petitioner

22   attributed fault solely to the prosecution, asserting that "[i]t is clear, however, that Respondent misled

23   Mr. Hoyos, leading counsel to abandon any efforts to find the person named by the person most

24   intimate with the victims as their killer."  (Lodgment No. 106, State Habeas Petition at 59.)  An

25   examination of the filings on direct appeal and state habeas reveal reveals that Petitioner never

26   presented the state court with a claim alleging that trial counsel was prejudicially ineffective in failing

27   to develop information regarding a third party culpability defense.

28

1    Therefore, the Court must conclude that while the essential facts pertaining to this claim were

2    previously presented to the state court, it was under a legal theory alleging a <u>Brady</u> violation and

3    prosecutorial misconduct, not alleging ineffective assistance of counsel.  (<u>See</u> Lodgment No. 106 at

4    52-61; Lodgment No. 117, State Habeas Reply Brief at 20-25.)  As such, the allegations of ineffective

5    assistance of counsel for failure to investigate and develop a third party culpability defense asserted

6    in Claim 14 of the First Amended Petition constitute a new legal theory which was never before raised

7    in state court.  <u>Gray</u>, 518 U.S. at 163.  The ineffective assistance of counsel allegation, raised here as

8    part of Claim 14, is unexhausted.[1]

9        **2.    <u>Claim 22</u>**

10    In Claim 22, Petitioner alleges that he was "deprived of the effective assistance of counsel by

11   counsel's failure to investigate and present substantial other exculpatory and impeaching evidence."

12   (FAP at 111.)  Specifically, Petitioner contends that trial counsel "failed to investigate and present

13   substantial evidence of petitioner's lack of involvement in the homicides, the likelihood of third party

14   culpability, and the numerous defects in the prosecution's forensic evidence.  Moreover, counsel failed

15   to investigate and present significant amounts of corroborating evidence to support the unsuccessful

16   defense that counsel did present."  (FAP at 112.)

17    Respondent directs the Court's attention to Claims XI and XII of the state habeas petition,

18   stating that in Claim XI, Petitioner argued that "trial counsel rendered ineffective assistance by failing

19   to present evidence" regarding victim Mary Magoon's involvement in her husband's drug business,

20   her use of cocaine, and her probable use of her son as a human shield during the crimes, and that in

21   Claim XII, Petitioner argued that "trial counsel rendered ineffective assistance 'by failing to develop

22   contradictions and inconsistencies in the prosecution's case, and to demonstrate the unreliability of

23   critical evidence' against him."  (Resp. Mem. at 5-6, citing Lodgment No. 106 at 132-47.)  Respondent

24

25

26    [1] Moreover, even if Petitioner had presented the legal theory of ineffective assistance of
27   counsel to the California Supreme Court, the addition of the Echeverria declaration and discovery
     documents to his federal claim would likely have rendered that claim unexhausted.  See <u>Aiken v.</u>
28   <u>Spaulding</u>, 841 F.2d 881, 883-84 (9th Cir. 1988) (a claim may be rendered unexhausted by the
     development of additional facts that place the claim in a "significantly different and stronger
     evidentiary posture" than the claim presented in state court.)

1    notes that the "failure to investigate likelihood of third party culpability is not mentioned in either

2    claim XI or XII," which renders federal Claim 22 unexhausted.  (Resp. Mem. at 6.)

3           However, upon the Court's examination of the First Amended Petition, Claim 22 clearly

4    focuses on the assertion that trial counsel failed to rebut the prosecution's case, particularly the

5    forensic evidence and testimony offered by the state, and failed to present evidence affirmatively

6    demonstrating Petitioner's lack of involvement in the homicides.  In fact, the term "third party

7    culpability" appears sparingly in the text of Claim 22.  Moreover, the Court has already found Claim

8    14 unexhausted due to that new legal theory; here, the reference to third party culpability is brief and

9    only incidental to the allegations in Claim 22, and does not render the claim unexhausted.

10          Respondent also asserts that Claim 22 is unexhausted because Petitioner's allegations in Claim

11   XII of the state habeas petition centered on "things his counsel could have highlighted," while the

12   Crawford declaration, offered as an exhibit to the federal petition, "does not reference arguments that

13   Hoyos' counsel could have highlighted, but lists eleven items of evidence that Crawford claims that

14   trial counsel should have investigated with greater care."  (Resp. Mem. at 6-7.)  George M. Crawford,

15   a former police officer and crime scene analyst, has offered a declaration in support of Claim 22, in

16   which he notes that there are several avenues of investigation that the defense team failed to

17   investigate, including but not limited to: a lack of blood or other evidence on Petitioner's clothing,

18   numerous items regarding ballistics and expended bullet casings, blood spatter evidence, prior bruises

19   found on victim Mary Magoon, Petitioner's lack of thumb on his right hand, potential chain of custody

20   issues, and vomit and a cigarette butt found at the scene.  (Ex. B to FAP at 11.)  Respondent contends

21   that the new factual allegations, largely attributable to the addition of the Crawford declaration,

22   "fundamentally alter" the claim previously presented to the state court, and render it unexhausted.

23   (Resp. Mem. at 7.)

24          Upon the Court's review of Claims XI and XII of the state habeas petition, it is evident that

25   Petitioner contended trial counsel was ineffective in failing to investigate and present evidence that

26   countered the prosecution's theory of the case.  In the state habeas petition, Petitioner explicitly

27   asserted that counsel "failed to develop contradictions and inconsistencies in the prosecution's case,

28   and to demonstrate the unreliability of critical evidence against Mr. Hoyos."  (Lodgment No. 106 at

132.)  Petitioner's state habeas claims focused on alleging trial counsels' failures in countering forensic evidence presented by prosecution including DNA evidence, blood typing evidence, the explanation of a wound found on Petitioner, ballistics, the location of blood stain evidence, the time of the crime, a cigarette found near victim Mary Magoon, fingerprint evidence, and hair evidence. In the state habeas proceeding, Petitioner also alleged trial counsel failed to present expert witnesses to counter the forensic testimony of blood spatter expert Brian Kennedy, serologist Gary Harmor, or ballistics expert Lance Marini.  (Id. at 146.)  Petitioner asserts that "[i]n light of the doubtful DNA testimony that was the basis for the prosecution's narrative, there is a reasonable probability that independent forensic testing would have developed evidence that would have undermined the prosecution's case, substantially strengthened the defense presented by trial counsel, or directed trial counsel to present another defense entirely - that petitioner and his codefendant came to the Magoon house after David Luna and/or his associates or other persons killed the Magoons."  (Lodgment No. 117 at 67.)

The courts have held that "[n]ew factual allegations do not render a claim unexhausted unless they 'fundamentally alter the legal claim already considered by the state courts.'"  Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999); Belmontes v. Brown, 414 F.3d 1099, 1117-18 (9th Cir. 2005), reversed on other grounds, Belmontes v. Ayers, 529 F.3d 834 (9th Cir. 2008).  For a claim to be rendered unexhausted by additional facts, the new material should place the claim in a "significantly different and stronger evidentiary posture" from the claim considered by the state courts. See  Aiken, 841 F.2d at 884.

Several items of evidence noted in the Crawford declaration *were* previously noted in the state habeas petition- for instance, assertions regarding the lack of blood or minimal amount blood found on Petitioner, a lack of explanation regarding the .22 caliber casings, and a lack of testing regarding a cigarette butt found at the scene.  Yet, Respondent is correct that the Crawford declaration does appear to offer several new facts in support of Petitioner's claim, notably: Petitioner having no right thumb, bruises on victim Mary Magoon in various states of healing and allegedly suggesting the possibility of prior domestic violence, the failure to collect and test vomit found at the scene, and the collection of some blood evidence 14 months after the crime.  However, a petitioner can develop

1  additional facts supporting a particular claim on federal habeas as long as the factual and legal basis

2  of that claim was previously presented to the state court.  Moormann v. Schriro, 426 F.3d 1044, 1056

3  (9th Cir. 2005).

4         Here, in state court, as in federal court, Petitioner claims that trial counsel was ineffective in

5  failing to investigate and present evidence in defense against the prosecution's case, specifically

6  concerning the physical and forensic evidence and Petitioner's alleged lack of involvement in the

7  crime.   In this case, where the state court did not grant an evidentiary hearing to allow full

8  development of the facts, it cannot be said that the state court did not have a "fair opportunity" to rule

9  on Petitioner's claim.  See Miller v. Estelle, 677 F.2d 1080, 1084 n.9 (5th Cir. 1982); see also Weaver,

10 197 F.3d at 364-65.  The factual allegations Petitioner has added to federal Claim 22 offer some

11 additional evidentiary support to the claim presented to the state court, but do not fundamentally alter

12 the claim, because the "essential factual and legal theories are the same as those presented to the

13 California courts."  Belmontes, 414 F.3d at 1118.  The new facts alleged in the federal petition do not

14 add anything that the state court would not have already considered "intrinsic to the consideration"

15 of this type of claim.  Aiken, 841 F.2d at 884, quoting Vasquez, 474 U.S. at 259.  This claim is

16 properly exhausted.

17                        **V. STAY AND ABEYANCE**

18        In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court explicitly recognized the

19 discretion of district courts in staying a mixed petition to allow a petitioner time to present

20 unexhausted claims to the state court.  Prior to Rhines, district courts would routinely dismiss mixed

21 petitions or give a petitioner the option of withdrawing the unexhausted claims and proceeding with

22 the exhausted petition in federal court, as federal courts may not "adjudicate mixed petitions for

23 habeas corpus, that is, a petition containing both exhausted and unexhausted claims."  See Rose v.

24 Lundy, 455 U.S. 509, 518-19 (1982).  In Rhines, the Supreme Court held that the stay and abeyance

25 of a mixed petition is appropriate when the district court finds that: (1) there was good cause for the

26 failure to exhaust the claim; (2) the claim is not plainly meritless; and (3) there is no indication that

27 the failure to exhaust was for purposes of delay.  Rhines, 544 U.S. at 277-78.  If a petitioner is able

28 to meet all three requirements for a stay under Rhines, the Supreme Court held that "it likely would

1    be an abuse of discretion for a district court to deny a stay." Id.; see also Jackson v. Roe, 425 F.3d

2    654, 661 (9th Cir. 2005).

3        Neither the Supreme Court nor the Ninth Circuit have explicitly defined good cause.  The

4    Supreme Court has recently held that a petitioner's reasonable confusion about whether his

5    unexhausted claims are time-barred in state court is sufficient to establish good cause under Rhines.

6    Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005).  The Ninth Circuit has noted that good cause does

7    not demand a petitioner meet a more stringent showing of "extraordinary circumstances."  Jackson,

8    425 F.3d at 661-62.  The Supreme Court also cautioned that if a petitioner "engages in abusive

9    litigation tactics or intentional delay, the district court should not grant him a stay at all." Rhines, 544

10   U.S. at 278.

11       Prior to Rhines, and in response to the Supreme Court's holding in Rose, the Ninth Circuit had

12   adopted a three-step withdraw and abeyance procedure.  Under this procedure a petitioner with a

13   mixed petition would: (1) withdraw the unexhausted claims, (2) the district court would stay the

14   action, holding the fully exhausted petition in abeyance while the petitioner returns to state court to

15   exhaust the unexhausted claims, and (3) upon his return to federal court, the petitioner would file an

16   amended petition adding the newly-exhausted claims to the previously-stayed petition.  Calderon v.

17   United States District Court (Taylor), 134 F.3d 981, 986 (9th Cir. 1998);  Kelly v. Small, 315 F.3d

18   1063, 1070 (9th Cir. 2003), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143, 1149 (9th

19   Cir. 2007) (overruling Kelly in holding that district courts are not required to consider the stay and

20   abeyance procedure *sua sponte*, but declining to modify "the 'strong preference' in favor of granting

21   the Kelly procedure, if requested by the petitioner, 'when an outright dismissal will render it unlikely

22   or impossible for the petitioner to return to federal court within the one-year limitation period.'")

23       In following this procedure, a district court would not run afoul of Rose, since the federal

24   petition would not be mixed once the unexhausted claims were withdrawn.  After Rhines, the Ninth

25   Circuit noted that because Rhines authorized stays of mixed petitions in certain limited circumstances,

26   "the three-step procedure may fall into disuse," but declined at that time to address whether the stay

27   standard announced in Rhines would apply to the Kelly procedure.  See Jackson, 425 F.3d at 661.

28   Later, the Ninth Circuit addressed this very issue, affirming and holding that "the Kelly procedure

1   remains available after Rhines and ... its availability is not premised upon a showing of good cause."

2   King v. Ryan, 564 F.3d 1133, 1140 (9th Cir. 2009).

3       While acknowledging the continued viability of a stay under Kelly, the Ninth Circuit observed

4   that the Rhines procedure remained the more attractive option, as Kelly represented "not only a more

5   cumbersome procedure for petitioners, but also a riskier one," because newly-exhausted claims may

6   be amended back into the federal petition "only if those claims are determined to be timely."  See id.

7   at 1140-41; see also Duncan v. Walker, 533 U.S. 167, 172-75 (2001) (unlike the filing of a state

8   habeas petition, the filing of a federal habeas petition does not toll the statute of limitations).  In order

9   to qualify for amendment after the expiration of the AEDPA's statute of limitations, a claim must

10  "relate back" to the original petition, which requires it to share a "common core of operative facts"

11  with the claims contained in the pending federal petition.  See Mayle v. Felix, 545 U.S. 644, 662-64,

12  659 (2005).

13  **A.      Analysis under Rhines**

14      In the Opposition to Respondent's Motion to Dismiss, Petitioner also "seeks leave to pursue

15  the stay and abeyance procedure [under Rhines v. Weber] rather than amend the existing petition to

16  delete claims [under Kelly v. Small] if the court finds them to be unexhausted."  (Pet. Opp. and Mot.

17  at 11.)

18      To detemine the propriety of granting a stay and abeyance of federal proceedings, the Supreme

19  Court has instructed that a court should determine: (1) whether there was good cause for the failure

20  to exhaust the claim; (2) whether the unexhausted claim is not plainly meritless; and (3) whether there

21  is any indication that the failure to exhaust was for purposes of delay.  Rhines, 544 U.S. at 277-78.

22  If a petitioner is able to meet all three requirements for a stay under Rhines, "it likely would be an

23  abuse of discretion for a district court to deny a stay."  Id.; see Jackson, 425 F.3d at 661.

24      A few district courts have drawn an analogy between "good cause" and the showing of cause

25  required to overcome a procedural bar.  Hernandez v. Sullivan, 397 F.Supp.2d 1205, 1207 (C.D. Cal.

26  2005);  Johnson v. Sullivan, 2006 WL 37037 at *3 (C.D. Cal. 2006) (unpublished memorandum);

27  Bader v. Warden, 2005 WL 1528761 at *7 (D. N.H. 2005) (unpublished memorandum).  Under the

28  procedural default doctrine, the courts have generally defined "cause" as an objective factor external

to Petitioner which gave rise to the default.  Coleman v. Thompson, 501 U.S. 722, 730 (1991).

However, the Supreme Court has also held that a petitioner's reasonable confusion about whether his

unexhausted claims are time-barred in state court is sufficient to establish good cause under Rhines.

 Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005).   Reasonable confusion is a less exacting standard

than acts found sufficient to establish cause under procedural default doctrine.  Murray v. Carrier, 477

U.S. 478, 488 (1986).  On remand in Rhines, the district court found that the definition of "good

cause" is more expansive than the cause required to overcome a procedural bar.  Rhines v. Weber, 408

F.Supp.2d. 844, 849 (D. S.D. 2005).

A number of other district courts have discussed the good cause standard, and found the

application less stringent than that required to establish cause to overcome procedural default.  A

district court in Pennsylvania concluded that good cause falls between the "lower threshold of

unfairness" and the "higher standard of extraordinary circumstances."  Baker v. Horn, 383 F.Supp.2d

720, 747 (E.D. Pa. 2005).  One California district court has favorably compared the good cause

standard to that of "excusable neglect."  See Corjasso v. Ayers, 2006 WL 618380 at *1 *E.D. Cal.

2006), citing Pioneer Inv. Services v. Brusnwick Associates, 507 U.S. 394 (1993).

There appears to be a measure of agreement that some factor either external to or outside the

control of Petitioner may be sufficient to demonstrate good cause for failure to exhaust claims in state

court.  As the Ninth Circuit has indicated that the good cause standard does not require a showing as

high as extraordinary circumstances, and the Supreme Court has held that reasonable confusion over

timeliness may also provide a sufficient showing of good cause, this Court is persuaded that a standard

of "excusable neglect" is an appropriate and reasonable standard to apply to an analysis of good cause

under Rhines.

Here, Petitioner asserts that the failure to raise the unexhausted claims earlier can be attributed

to the fact that "state habeas counsel conducted a wide-ranging investigation, raised an extensive array

of claims, and may be faulted only in failing to formulate and organize the claims in a manner that

comports with the technical requirements of section 2254 exhaustion."  (Pet. Opp. and Mot. at 11.)

Petitioner's preferred reason does not constitute good cause for failing to exhaust Claim 14 in state

1    court.  Under an application of the "excuable neglect" standard, "counsel's oversight ... do[es] not

2    constitute good cause" for failing to exhaust claims in state court.  Corjasso, 2006 WL 618380 at *3.

3         The Corjasso court was careful to distinguish between "excusable neglect," which could

4    constitute good cause, and simple negligence, reasoning that "[t]he point is whether some outside,

5    uncontrollable event precluded the bringing of the [] issue."  Id. at *2.  In that case, the district court

6    was not persuaded that counsel's work load and oversight of the unexhausted claim failed to constitute

7    good cause, reasoning that "[i]f the court found these circumstances to justify the delay, then good

8    cause could be found in virtually every case, which the Supreme Court clearly did not intend in

9    Rhines."  Id. at *3.

10        The situation presented here is analogous to that in Corjasso, as Petitioner's failure to raise the

11    claim in state court was not the result of any external event outside his control, but was due to

12    deliberate decisions made by counsel in "formulating and organizing the claims" for presentation to

13    the state supreme court.  As such, "[s]imply saying that the issue was overlooked by counsel is not

14    outside the control of petitioner since he is held bound by the acts of his counsel."  Id. at *2.

15        In sum, Petitioner is unable to demonstrate good cause for failing to exhaust Claim 14 in state

16    court.  Accordingly, the Court declines to stay the federal proceedings and hold the mixed federal

17    petition in abeyance under Rhines v. Weber.

18   **B.    Analysis under Kelly**

19        Petitioner alternately states that "if the Court deems one or both claims unexhausted, but does

20    not grant the motion to stay under Rhines, then Petitioner requests that the Court grant the motion to

21    stay under the alternative procedure of Kelly v. Small."  (Pet. Opp. and Mot. at 17.)  Respondent

22    contends that Petitioner is not entitled to a stay under Kelly, because Kelly only applies to fully-

23    exhausted petitions and the First Amended Petition is "mixed," and because Petitioner is unable to

24    exhaust his claims and return to federal court within the statute of limitations.  (Resp. Opp. at 5-6.)

25        Respondent's first objection is unpersuasive.  Under Kelly, it is correct that a district court will

26    only issue the stay of a fully-exhausted petition.  However, as outlined above, the Kelly procedure

27    contains three-steps, in which a petitioner with a mixed petition would: (1) withdraw the unexhausted

28    claims, (2) the district court would stay the action, holding the fully exhausted petition in abeyance

while the petitioner returns to state court to exhaust the unexhausted claims and (3) upon his return to federal court, the petitioner would file an amended petition adding the newly-exhausted claims to the previously-stayed petition.  See Kelly, 315 F.3d at 1070.  The fact that the First Amended Petition is currently a mixed petition does not impact the availability of the Kelly procedure in the instant case.

In regards to Respondent's second objection to the applicability of the Kelly procedure, in which he asserts that Petitioner cannot exhaust any unexhausted claims in a timely manner in order to include them in the federal proceedings, the Court acknowledges that the Kelly procedure is the riskier procedure for precisely the reason highlighted by Respondent.  Under this procedure, once the state exhaustion procedings are completed, any claims that Petitioner attempts to include in the amended petition must "relate back" to the original, fully-exhausted petition, which only occurs if they share a "common core of operative facts. " Mayle, 545 U.S. at 662.  However, whether any potential claims that Petitioner attempts to exhaust relate back to the fully-exhausted federal petition is not a matter that must be decided at present.  Once Petitioner returns to federal court after the resolution of the state exhaustion proceedings, Respondent is free to oppose the addition of any claims that are raised, that in the their view, do not relate back to the federal habeas petition filed in this Court.[2]  The Court will decide the issue at that time.

Numerous factors, including judicial efficiency, economy, and comity all weigh in favor of granting a stay of the First Amended Petition.  For instance, if the California Supreme Court grants Petitioner relief on any claims in a state exhaustion petition, he may not need to proceed with the petition in federal court.  Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982).  Alternately, if the California Supreme Court denies relief on the state petition, then all claims will be properly exhausted and Petitioner can promptly proceed with the federal petition in this court.  Without a stay of the federal proceedings, this Court would have to resolve the exhausted claims contained in the current petition, and it could become necessary to consider a second federal petition once the state

---

[2] Additionally, Respondent remains free to raise any arguments related to the statute of limitations, which the Court will also address upon Petitioner's return to federal court.  See King, 564 F.3d at 1140-41 ("A petitioner seeking to use the Kelly procedure will be able to amend the unexhausted claims back into his federal petition once he has exhausted them only if those claims are determined to be timely.")

1   proceedings are concluded.  A stay would also avoid piecemeal litigation, thereby efficiently utilizing

2   judicial resources.

3          As a matter of federal-state comity, federal courts generally do not consider a claim raised in

4   habeas corpus proceedings until the state court has had an opportunity to act upon the claim.  <u>Rose</u>,

5   455 U.S. at 515.  Granting a stay "allows the state courts to have the unfettered first opportunity to

6   review the prisoner's claim and to provide any necessary relief."  <u>Nino v. Galaza</u>, 183 F.3d 1003, 1007

7   (9th Cir. 1999).  A stay also avoids "the 'unseem[liness] of a federal district court's overturning a state

8   court conviction without the state courts having had an opportunity to correct the constitutional

9   violation in the first instance."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  Moreover, a stay

10  respects not only comity but also the interests of federalism, as "by staying the federal hand while the

11  state court is considering the claim, we also recognize that each state is entitled to formulate its own

12  system of post-conviction relief, and ought to be able to administer that system free of federal

13  interference."  <u>Nino</u>, 183 F.3d at 1007.

14                                  **VI.  CONCLUSION**

15         For the reasons discussed above, Respondents's Motion to Dismiss for Failure to Exhaust is

16  **DENIED** and Petitioner's Motion to Stay the federal proceedings is **GRANTED** under the procedure

17  outlined in <u>Kelly v. Small</u>.  If Petitioner wishes to avail himself of the <u>Kelly</u> procedure, the Court

18  directs Petitioner to withdraw the unexhausted aspect of Claim 14 from the First Amended Petition

19  within seven (7) days from the date this Order is filed.

20         Pursuant to Local Rule HC 3(g)(5), the Court grants Petitioner a thirty (30) day period in

21  which to commence litigation on the unexhausted claim in state court.  Petitioner shall present Claim

22  14 to the state court within thirty (30) days of the date this Order is stamped "Filed," and file proof

23  of that submission in this Court.  Thereafter, Petitioner shall file a brief report with this Court every

24  ninety (90) days informing the Court of the status of the state court petition.  Finally, Petitioner shall

25  file his Second Amended Petition in this case within thirty (30) days of the state court's resolution of

26  his state habeas petition.  If Petitioner does not file an Amended Petition within this time frame, the

27  stay and abeyance shall be lifted, and the matter shall proceed accordingly.

28

1    During the state court proceedings, all proceedings on the federal petition will be stayed.  This

2    will allow the California Supreme Court to complete the litigation of the state habeas petition before

3    the substantive litigation on the federal habeas petition proceeds in this Court.

4    **IT IS SO ORDERED.**

5    DATED:  January 4, 2011

6    _____
     M. James Lorenz

7    United States District Court Judge

8    COPY TO:

9    HON. NITA L. STORMES
     UNITED STATES MAGISTRATE JUDGE

10

11   ALL PARTIES/COUNSEL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -